for his case this morning, United States against Coe. Ms. Day, you may proceed. May it please the court. Good morning, your honors, Ms. Hudson. Mr. Coe brings his appeal to address issues regarding equal protection and consideration of, or non-consideration of certain factors at his sentencing hearing. In particular, the two arguments that he's concerned about are an argument regarding the rejection of an argument regarding the fact that he had an absent father in his home and that that impacted his life as a juvenile. And he was still very young when this offense occurred. He was 18 years old and approximately four months. And also to bring consideration of the brain science argument. And that has to do with obviously the development of the brain and the scientific information regarding brain development. Mr. Coe's position is that the court erroneously rejected the absent father argument. And in so doing so basically indicated that it's not uncommon in the African-American home for there to be an absent father. So that's not an argument that can be accepted or should be put forward, I assume, or should be given due consideration. But there was no reasoned basis for the court to reject that particular argument. And in fact, that belief is an erroneous stereotype. As cited in the briefing, the indications are that actually black fathers, African-American fathers are generally more involved, do more of the care of their minor children than others. And I believe that the statistics involve both white fathers and Latino fathers. And so there seemed to be a misapprehension by the court in thinking that this shouldn't be considered for sentencing purposes because it's just not uncommon. And yet it is more apparently more uncommon there than in where white father figures or Latino father figures are concerned. So the equal protection argument, first of all, we have the erroneous stereotype and that's being used to treat two classes of people differently, those who are black and have a missing black father in the family as opposed to those who are white or other races and have a missing father in the family. So basically we have two created classes here based on race. And the question is, is there a rational relationship between the disparate treatment and some legitimate government interest? Well, obviously there's no legitimate government interest in any type of different treatment here. And this resulted in this erroneous stereotype and Mr. Koh not receiving due consideration of his arguments, the brain science, yes. Your argument supposes that the district court made something turn on this observation. The essential argument for the United States as I understand it is there's absolutely no reason to think this was anything other than an irrelevant aside. So my question is, why do you think that this mattered to the district judge? Why do I think that the client's race mattered to the district judge? Why do you think that this observation about how often other fathers are missing was pertinent to the district judge? The government's argument is that the judge said over and over, I am assessing what your upbringing was and how well you were taken care of. You assume that this observation about missing parents for other people mattered. I'm simply asking why that's a good assumption. So Your Honor, I think if I understand this correctly, the point is if the judge can say you had a good upbringing, then she gets to discount the things that might've affected that. And that's what happened here. She completely discounted the fact that there was an absent father and that might have actually had a serious impact on him. How much better his life might have been, how he might've been better guided and made better decisions. Counsel, maybe I'm just not being clear. The judge made observations about why this defendant's missing father from the age of 13 was not a ground for lenience. The judge also made what appears to be an aside about the number of other people who have missing fathers. Your argument concentrates on the latter statement by the judge. I'm trying to figure out why you believe that that latter statement by the judge mattered, why it played a role. Well, other than, as I've been saying, the fact that she was relying on this stereotype playing a role. My argument was not that Mr. Koh did not have a mother in his life or have other resources in his life that helped him, but obviously they didn't help him enough. And having an absent father played into that and increased his likelihood of having the problems that he had. So you can't, this is sort of like comparing apples and oranges and saying, well, you have these oranges over here, so life should be good when we all know your life would be a lot better if you had the apples in your life as well. So what is missing is the consideration of the absent father and what impact that actually had on his life. So, you know, folks have good things go in their life and they have bad things go in their life. She only considered the good thing that he had a mother and a grandmother who were there for him, but did not consider the factor, refused to consider the factor that he had an absent father and she refused to because that was a commonly, basically she said, you know, that's common in our community. Last time, you again used the word because. You were simply assuming that this statement played a causal role in the calculation of the sentence. And I have yet to hear an argument about why you think it did. Well, Judge, I think we get to consider what's in the record and what she says she did and didn't consider and she wasn't going to consider that. So how does that play in? If she had actually given it due consideration, then she might well have returned a more lenient sentence for the client. I don't have the crystal ball that lets me say that had she appropriately considered it, that she would have, but I can say that by not appropriately considering it, she leaves out this really important segment of his life, which is something that she needs to consider in the 3553A factors. And I'm sorry if I'm being obtuse, if I'm not understanding that, it's not intentional, Your Honor. The second argument, and Your Honor, I see that I've gone into my rebuttal time. So I'll reserve the remainder of that time. That's fine, thank you. Ms. Hudson. Thank you, Your Honor. May it please the court, excuse me. I apologize. May it please the court, counsel, no procedural error existed in this case. The district court here made a large error in a long record. I believe it contains four pages of transcript, pages 20 to 24. The district court considered 3553A factors that were pertinent. The district court made the proper assessment of the 3553, I'm sorry, of the sentencing guidelines. Ms. Hudson. Yes, Your Honor. My question for you is the reverse of my question for Ms. Day. You expressed confidence that the judge's statement was just an irrelevant aside. How can we know that? Ms. Day is confident that the statement played a role in the calculation. You were confident it did not. How can we tell whether or not it played a role? Thank you, Your Honor. I would draw the court's attention, I believe it is to pages 23 and 24 of the transcript. The court's own words draw the court's attention to its intention. The court is addressing appellant's first argument in mitigation and said, now does the fact that you lost your father to imprisonment at age 12, obviously it had some impact. But you had a very supportive mother and family. And even in the PSR, you admit yourself. I am well aware of the fact that the district judge said other things. But she also made a racially tinged remark. The question I'm asking is, how do we know that the racially tinged remark played no role in the calculation? I assume we're agreed that if the judge gave Mr. Ko even one day more in prison because of his race, that is a reversible error. So each side in argument is confident that the judge did or did not place any weight on this statement about how often black fathers are missing from their children's upbringing. How do we know whether that played a role? Thank you, Your Honor. Again, I turn to the court's transcript. What the court is arguing or explaining is the difference she's considering. And that has to do with whether or not this particular person had a support system, an individually based assessment. We're not communicating. The judge, of course, said all those things. She also said that black fathers are missing more often. You want us to say that the other things she said are the only things she took into account. How do we know that they are the only things she took into account? That's my problem. She said, let's say, 10 things. You're confident that she relied on nine and the 10th was an aside. Ko's lawyer is confident that the 10th was important. And I'm sitting here looking at the transcript, trying to figure out how we know whether the 10th was important or just a piece of fluff. I appreciate the court's question. And again, I direct the court to the transcript because the transcript states what she is considering, what this court is considering, is whether or not there's a support system or whether it's not. What she is attempting to explain to the appellant at the sentencing hearing is, hey, this is not uncommon. Basically, get over it. You had other people on your side. And those are the reasons why you should have had a good upbringing. We cannot excuse any type of criminal conduct because there's a loss. Now, there isn't anything other in what is said than a very individualized, a very personal and a very specific statement by the court. The court does say, I'm sure you had some loss, but unlike some people who have no one, that's not your story. There's no evidence tying the court sentence to any type of racial connotation other than what is read into it by appellant. Going on from that, counsel repeatedly in briefs state that the court wholly dismisses or throws away the other arguments. This court went through a meticulous, thorough, exhaustive review of all the sentencing factors in 3553A, the victim impact, the fact that he had a loving mother and a support system, the fact that the crime facts itself were outrageous. The court used all of those factors in making the assessment. This is unlike a situation the court recently ruled upon where in the central district, one of the district court judges said, A, should receive a sentence lower than one individual, but higher than another, and then did the opposite. This is one where the court very clearly considered all the factors and said, based on what I have heard, I am sentencing you at the low end of the guideline and not below the guideline. The court didn't isolate one factor, the court considered many factors. That also includes appellant's second argument, and that has to do with the brain development. If you look at the brain development, the district court does mention that she takes that into consideration, and she does give an explanation for her consideration, and that's all that's required. This is a discretionary issue. There's no basis upon which to find a procedural error when the court does make that assessment. In the reply brief, appellant attempts to argue that the court misunderstood or misapprehended this argument, stating that the court focused upon the age of 18 or 19, and I would draw the court's attention to the fact that in document 10, page 43, lines nine to 10, appellant, in argument, mentioned the fact that appellant Mr. Coe was 18 years old. Mr. Coe, during his allocution, also mentioned that he was 18 years old. So the court's comments mirror those of the defendant. Therefore, there's nothing within the brain science argument that should cause any concern. It was dutifully considered and set aside. Finally, appellant argues that there is a mistake of fact, a clearly erroneous mistake of fact, as it relates to a myth. Looking at that myth argument, first, commentators and researchers have reached opposing opinions. Those noted on Appellee's Brief, page 16, note four, and appellant's brief on pages eight and 16. If the court looks then at is it clearly erroneous, if reasonable minds are differing, the court could not have made a clearly erroneous mistake. Second, appellant's own research demonstrates that the court, district court, was correct, and I would draw the court's attention to the New York Times article on page eight and 12, written by Kenra Nassal, that says it's a myth that black fathers are absent. The opening sentence of that article says that more than half of black homes are headed by women. So what the district court stated that it is common in our community is actually correct, based upon appellant's own argument. Your Honor, I respectfully request that this court find that the district court gave a thorough and well-considered consideration of all the factors raised by Mr. Coe at the sentencing hearing, and to affirm the judgment. Thank you, Your Honor. Your Honors. Thank you. Ms. Day, you have some time left. Thank you, Your Honors. I want to take just a moment to address the brain science argument, and say that the transcript makes clear that the judge doesn't really understand at sentencing what that brain science argument is about. And she indicated that she considered it, but that even young men who are 18, most of the young men who are 18 didn't commit these kind of crimes. That's comparing the argument to the argument, not to the 3553A factors, and giving it due weight and consideration there. And the reality is that the fact that every other person in the world may not have done this does not mean that it is not a valid argument for consideration in sentencing. That's why we have such things as imperfect duress, because you have folks who don't meet the duress argument, and yet that somehow impacts what their sentence should be. Ms. Day, why is it a valid argument? It's not particularized to your client. Because it covers a broad range of individuals, such as the defendants in Roper and Graham. Your argument is that it covers everyone. My argument is that- If that's true, then it would be a factor that must be considered and weighed and evaluated and litigated as an empirical matter at every sentencing that involves a defendant who is in the age range that you were focusing on. So that's not particularized to the defendant's circumstances and the whole point of the 3553A factors is to make a particularized argument to the defendant and the defendant's circumstances and the circumstances of the crime. So a broad brush argument like this one, it seems to me can rightly be rejected in a summary fashion. I don't think that any argument that in its essence impacts the individual can be given that broad brush look and it's completely disregarded. It isn't- Why not? Your Honor, because we're looking at individuals and all of the elements in their lives that impact them, that bring them to this moment, the fact that the same thing might impact somebody else doesn't mean it impacts them in the same way. So we have to look at the individual. My point is that you did not particularize the argument to your client. It was a very broad brush argument about brain science in general and youth. Well, Your Honor- Absence of particularization to this defendant that there was something about his psychological makeup that contributed to his criminality, then it seems to me the court can comment on it in a very general fashion and move on without violating any norm of sentencing. And of course, I hope you'll understand that I respectfully disagree because I do think that there was information considering his youth and his life that supported that argument. All right, thank you. Thank you so much. Thanks to both counsel, the case is taken under advisement.